UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOLEKSIS BIIN TUTORA,

                                    Plaintiff,

                                                        9:10-CV-0207
v.                                                      (MAD/TWD)

CORRECTIONAL MEDICAL CARE, INC.,
MICHELE PARSONS[1], DR. BUTT,
JOHANNA LOVELL,

                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

TOLEKSIS BIIN TUTORA
Plaintiff *pro se*
425 Robinson Street
Binghamton, New York 13904

SMITH, SOVIK, KENDRICK & SUGNET, P.C.       DANIEL R. RYAN, ESQ.
Counsel for Defendants Correctional Medical
        Care, Inc. and Michele Parsons
250 South Clinton Street, Suite 600
Syracuse, New York 13202-1252

MARULLI, LINDENBAUM, EDELMAN                RICHARD O. MANNARINO, ESQ.
        & TOMASZEWSKI, LLP
Counsel for Defendant Johanna Lovell
5 Hanover Square, 4th Floor
New York, New York 10004

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

_____

        [1] The docket lists this Defendant as "Michelle" Parsons.  In an affidavit filed in support of
her pending motion for summary judgment, Defendant Parsons refers to herself as "Michele"
Parsons.  (Dkt. No. 42-8 ¶ 1.)  I will use Defendant Parsons' preferred spelling herein.

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Toleksis Biin Tutora claims that Defendants violated his constitutional rights by failing to provide him with adequate dental care. (Dkt. No. 1.) Currently pending before the Court are two motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The first was filed on behalf of Defendant Johanna Lovell. (Dkt. No. 41.) The second was filed on behalf of Defendants Correctional Medical Care ("CMC") and Michele Parsons. (Dkt. No. 42.) Plaintiff has not opposed the motions. For the reasons discussed below, I recommend that the Court grant the motions for summary judgment, *sua sponte* dismiss the claims against Defendant Dr. Butt, *sua sponte* dismiss the claims against CMC, and, in the alternative, dismiss the action for Plaintiff's failure to comply with Court orders.

## I.      LEGAL STANDARD AND EVIDENTIARY ISSUES

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather,

a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party. *Major League*

*Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he

fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, practically

speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record

presented on the defendants' motion, and (2) assure itself that, based on the *undisputed* material

facts, the law indeed warrants judgment for the defendants. *See Champion*, 76 F.3d at 486; *Allen*

*v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y.

L.R. 7.1(b)(3).

When a plaintiff has failed to properly respond to a defendant's Statement of Material

Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted

as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the

non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential

consequences of failing to respond to the movant's motion for summary judgment. *See*

N.D.N.Y. L.R. 7.1(a)(3); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241,

244 (2d Cir. 2004); *Champion*, 76 F.3d at 486.

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

Here, Defendants advised Plaintiff of the potential consequences of failing to respond to their motions for summary judgment.  (Dkt. Nos. 42 and 44-1.)  Although neither set of moving Defendants used the sample notice referred to in the local rules, the notices substantially complied with the local rules.  The issue, then, is whether Defendants' facts are supported by evidence in the record.

Motions for summary judgment must be supported by admissible evidence.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Both motions for summary judgment are supported by various facility records, including medical records.  (Dkt. Nos. 41-9, 42-4, 42-5.)  Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  Fed. R. Evid. 802.  Medical records, although hearsay, may be admissible under the business records exception to the hearsay rule.  That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation."  Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902.  Fed. R. Evid. 803(6).  Here, the records are not supported by any custodial affidavit and have not been certified. The records submitted by Defendants are not admissible and I have not considered them.  *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980).  I have, however, considered the verified complaint, Plaintiff's deposition testimony, and the affidavits filed in support of Defendants' motions.  That evidence is summarized in the next section.

4

## II.      FACTUAL AND PROCEDURAL SUMMARY

The complaint alleges that:

> Since Dec. 17th 2009, Plaintiff has put in medical request forms for "emergency dental care."  During the past 63 plus days of pain and inflamation, Plaintiff has only received p[er]functory medical care of an anti[]biotic, which was excessive and has caused intestinal malfunction and x-rays done by an orthodontist, only known as "Dr. B," who ordered emergency extraction.  To date?  Nothing.

(Dkt. No. 1 at 2.)  Although the "parties" section of Plaintiff's form complaint lists CMC, Michele Parsons, Dr. Butt, and Johanna Lovell as Defendants, the complaint does not make any specific allegations about any of the named Defendants.[3]

Facts about Defendants' involvement in Plaintiff's care emerged during discovery. Plaintiff testified at his deposition that he arrived at Broome County Correctional Facility on December 12, 2009.[4]  (Dkt. No. 41-8 at 8:4-6.)  He first spoke to Defendant Nurse Lovell about his jaw pain sometime between December 15 and December 31, 2009.  *Id*. at 19:4-17.  Plaintiff told her that he had swelling in his jaw and she told him she would "take a look to see if it's a tooth."  *Id*. at 19:21-24.  After looking in Plaintiff's mouth, Defendant Lovell told him that there was a cavity in his left upper molar.  *Id*. at 20:3-11.  Defendant Lovell told Plaintiff that there was a waiting list for dental work.  *Id*. at 20:20.  Plaintiff said "this is new to me because since

---

[3]       As discussed below, the "Dr. B" to whom the complaint refers is Dr. Biondollilo, not Dr. Butt.

[4]       It is not clear from the record whether Plaintiff was a state pretrial detainee during the time relevant to this action or whether he had been convicted.  The Due Process Clause of the Fourteenth Amendment protects the medical rights of pretrial detainees, while the rights of convicted prisoners are protected by the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  However, both provisions apply the same "deliberate indifference" standard. *Id*. at 72.  This Report-Recommendation will refer to the Eighth Amendment, but I am aware that Plaintiff's claims may properly be characterized as arising under the Fourteenth Amendment.

I've been coming to Broome County Jail if we have an emergency dental problem it got taken care of within at least 24 hours." *Id*. at 20:21-24.  Plaintiff's previous experience with dental work at Broome County Correctional Facility was in 1990 or 1991.  *Id*. at 23:2-9. Defendant Lovell said that things had changed.  *Id*. at 20:25-21:2.  Plaintiff asked Defendant Lovell for pain medicine, but she did not give him any that day.  *Id*. at 29:3-12.  Plaintiff asked to speak to Defendant Lovell's supervisor, Defendant Parsons.  *Id*. at 20:12-18, 21:5-6.  Plaintiff spoke to Defendant Parsons within fifteen or twenty minutes of this request.  *Id*. at 24:19-22.

In contrast to Plaintiff's version of events, Defendant Lovell declares that she "had no involvement in either evaluating [Plaintiff's] dental complaints at any time during December 2009-January 2010 or referring him for treatment for any dental complaints."  (Dkt. No. 41-10 ¶ 7.)  Defendant Lovell declares that she treated Plaintiff twice in December 2009, but neither of those occasions involved dental care.  *Id*. ¶¶ 8-9.  Defendant Lovell declares that she did have Defendant Parsons see Plaintiff one time at Plaintiff's request, but that that incident involved Plaintiff's concern about his psychiatric medication.  *Id*. ¶ 18.

Regarding Defendant Parsons, Plaintiff testified at his deposition that he told Defendant Parsons that he had "an emergency dental situation, that I sought to get it taken care of and that I couldn't understand why Miss Lovell would tell me that I had to wait."  (Dkt. No. 41-8 at 27:11-16.)  According to Plaintiff, Defendant Parsons told Plaintiff that he needed to stop coming back and forth to jail, that he was not anyone special, and that "when they got around to seeing what [his] needs were, she'd take care of it."  *Id*. at 27:21-28:4.

Defendant Parsons' declaration does not directly contradict Plaintiff's version of their meeting.  (Dkt. No. 42-8.)  However, Defendant Parsons declares that under Broome County

Correctional Facility procedures, "[a]fter an initial evaluation, *the dentist* decides if and when the inmate must be seen for a follow-up appointment.  In other words, neither myself nor the nursing staff are responsible for scheduling follow-up dental treatment needs."  *Id.* ¶ 4 (emphasis in original).

Regarding Defendant Butt, Plaintiff testified at his deposition that Dr. Butt wrote him a prescription for the antibiotic Keflex.  (Dkt. No. 41-8 at 30:8-14.)  The swelling in Plaintiff's jaw went down after he started taking the Keflex.  *Id.* at 31:5-12.  However, the Keflex gave Plaintiff diarrhea.  *Id.* at 32:1-2.  Plaintiff took the entire twelve-day course of Keflex.  *Id.* at 32:10-15.

Plaintiff testified at his deposition that he put in another sick call request regarding his jaw pain sometime in January 2010.  *Id.* at 33:6-11.  In response, he received a prescription for the pain killer Naprosyn.  *Id.* at 33:12-18.

Plaintiff testified at his deposition that he saw Dr. Biondollilo, an oral surgeon, toward the end of January 2010.  *Id.* at 34:4-35:10.  Dr. Biondollilo took x-rays of Plaintiff's teeth.  *Id.* at 36:9-16.  Dr. Biondollilo told Plaintiff that his tooth was decayed and would need to be extracted.  *Id.* at 36:17-23.  Plaintiff asked if Dr. Biondollilo would remove the tooth that day.  *Id.* at 37:7.  Dr. Biondollilo said that Defendant Parsons would have to schedule a follow-up appointment for the surgery.  *Id.* at 37:8-13.  Dr. Biondollilo asked Plaintiff if he was in pain.  *Id.* at 37:19-22.  Plaintiff said that he was.  *Id.* at 37:22-23.  Plaintiff told Dr. Biondollilo that the pain medication he was receiving was not helping.  *Id.* at 37:25-38:3.  Dr. Biondollilo told Plaintiff to keep going to sick calls and putting in requests to let medical staff know the medication was not working.  *Id.* at 38:6-8.

On January 22, 2010 Plaintiff submitted a request for services indicating that he had a "painful tooth and missing filling." *Id*. at 41:4-7. He did not receive a response to that request. *Id*. at 41:14-18. Plaintiff testified at his deposition that he submitted another request for services sometime in February 2010 to which he did not receive a response. *Id*. at 43:5-21. Plaintiff did not receive any further treatment for his jaw pain while he was at Broome County Jail. *Id*. at 44:3-10. He transferred out of the facility at the end of March 2010. *Id*. at 44:11-14.

Plaintiff filed this action on February 23, 2010. (Dkt. No. 1.) Defendants filed their motions for summary judgment in September 2011. (Dkt. Nos. 41 and 42.) On September 26, 2011 the Court sent Plaintiff a letter advising him that he needed to respond to the motions by October 17, 2011. (Dkt. No. 43.) The letter was returned to the Court marked "return to sender." (Dkt. No. 45.) On September 27, 2011 counsel for Defendant Lovell advised the Court that the motion papers sent to Plaintiff had been returned marked "return to sender." (Dkt. No. 44.) On October 3, 2011 counsel for Defendants CMC and Parsons advised the Court that their motion papers had also been returned as undeliverable. (Dkt. No. 46.)

On February 10, 2012 this case was assigned to me following the retirement of the Hon. George H. Lowe. (Dkt. No. 49.) A notice to Plaintiff regarding this reassignment was returned as undeliverable. (Dkt. No. 50.)

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

The verified complaint alleges that there is a prisoner grievance procedure at Broome County Correctional Facility but that Plaintiff did not use it because his "life would be at risk for system is 'tainted.'" (Dkt. No. 1 at 2-3.) Defendants argue that the Court should dismiss this action because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 41-11 at 3-4;

8

Dkt. No. 42-9 at 10 n.1.[5])  Defendants are correct.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81 (2006).

Defendants have not presented any evidence about the existence or requirements of the administrative review process at Broome County Correctional Facility.  *Compare Sipe v. Harder*, No. 9:08-CV-1365 (FJS/ATB), 2010 U.S. Dist. LEXIS 88416, 2010 WL 3418382 (N.D.N.Y. Aug. 4, 2010) (Broome County Correctional Facility defendants moving for summary judgment on exhaustion grounds provided affidavit from administrator describing facility's grievance procedure).  Rather, Defendants rely entirely on Plaintiff's admission in his verified complaint that there is a prisoner grievance procedure at the Broome County Correctional Facility but that he did not use it because his "life would be at risk for system is 'tainted.'" (Dkt. No. 41-2 ¶ 41.)

---

[5]      Citations to page numbers in Defendants' memoranda of law refer to the page numbers in the original documents rather than to the page number assigned by the Court's electronic filing system.

Defendants are, thus, essentially arguing that the complaint fails to state a claim.

A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable claim under 42 U.S.C. § 1983. *Bock*, 549 U.S. at 211-17. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id*. at 215-16. Here, the face of Plaintiff's complaint shows that Plaintiff failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Here, as discussed above, Plaintiff conceded in his complaint that administrative remedies were available to him.

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the

_____

[6]    The Second Circuit has not yet decided whether the *Hemphill* rule survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in *Woodford* . . . We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived . . . We . . . decline to reach the issue.").

[prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Here, Defendants preserved the exhaustion defense by asserting it in their answers. (Dkt. No. 21 ¶ 14; Dkt. No. 30 ¶ 14.) Moreover, nothing in the record before the Court indicates that Defendants' own actions should estop them from asserting the defense. Although the complaint alleges that Plaintiff did not exhaust his administrative remedies because his "life would be at risk for system is 'tainted,'" Plaintiff does not allege that any of the named Defendants personally played any role in tainting the system. Indeed, as discussed above, the complaint does not allege any facts at all about any of the named Defendants.

Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Here, although the verified complaint alleges that the administrative remedy system at Broome County Correctional Facility is "tainted," Plaintiff has not provided the Court with any facts to support that assertion. Accordingly, Plaintiff has not plausibly alleged any facts justifying his failure to comply with the administrative procedural requirements. Therefore, I recommend that the Court dismiss the action because Plaintiff failed to exhaust his administrative remedies.

**IV.    MERITS OF CLAIMS AGAINST DEFENDANT LOVELL**

**A.    Personal Involvement**

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  Defendant Lovell argues that she is entitled to summary judgment in her favor

because Plaintiff's medical records and Defendant Lovell's affidavit show that she "was not

involved in examining [P]laintiff, or making any referrals with regard to his dental complaints."

(Dkt. No. 41-11 at 5.)

As discussed above, Defendants have not submitted any admissible medical records.

Plaintiff's deposition testimony and Defendant Lovell's declaration set forth two contradictory

versions of what transpired.  Resolving the contradiction requires making credibility

determinations.  "Credibility determinations . . . are jury functions, not those of a judge."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Rule v. Brine, Inc.*, 85 F.3d

1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions

of the events are matters for the jury, not for the court on summary judgment.").  Therefore,

Defendant Lovell is not entitled to summary judgment on this ground.

**B.    Deliberate Indifference to Serious Medical Needs**

Defendant Lovell argues that she is entitled to summary judgment even if the Court

credits Plaintiff's deposition testimony that she treated him for his dental complaints.  (Dkt. No.

41-11 at 5-10.)  Defendant is correct.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual"

punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference."  *Caiozzo*, 581 F.3d at 72 (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

Regarding the objective element, a  "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Here, Defendant Lovell does not argue that Plaintiff's dental condition was insufficiently serious to satisfy the objective element. Indeed, the Second Circuit has held that "a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citing *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

Regarding the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

14

*Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

Here, even accepting Plaintiff's version of his encounter with Defendant Lovell as true, there is no evidence from which a reasonable juror could conclude that Defendant Lovell was deliberately indifferent to Plaintiff's medical needs. Plaintiff testified that Defendant Lovell examined him, explained facility procedures to him, and then quickly referred him to her supervisor at his request. Defendant Lovell refused to give Plaintiff pain medication, but the record shows that Plaintiff received antibiotics and pain relievers from other providers when his symptoms persisted. Nothing in this record indicates that Defendant Lovell acted with a conscious disregard of a substantial risk of serious harm. Therefore, I recommend that the Court grant Defendant Lovell's motion for summary judgment.

## V.     CLAIMS AGAINST DEFENDANT PARSONS

Defendant Parsons argues that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's medical needs. (Dkt. No. 42-9 at 2-8.) Defendant Parsons is correct. The evidence before the Court shows that Defendant Parsons met with Plaintiff at his request. Under the facility's procedures, Defendant Parsons was not responsible for scheduling follow-up dental appointments. (Dkt. No. 42-8 ¶ 4.) The evidence shows that Plaintiff saw an oral surgeon within a month of his initial complaint about jaw pain. Although Plaintiff may not have liked the tone that Defendant Parsons took with him, mere words are not actionable civil rights violations. Even verbal harassment that is far more severe than the mild rebuke alleged here is not a violation of the Eighth Amendment. *Jermosen v. Coughlin*, 878 F. Supp. 444, 449

15

(N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983."). Therefore, I recommend that the Court grant Defendant Parsons' motion for summary judgment.

## VI.   CLAIMS AGAINST DR. BUTT

Defendant Dr. Butt was personally served with the summons and complaint on August 12, 2010. (Dkt. No. 17.) He has not appeared in the action. At his deposition, Plaintiff was asked "what type of care and treatment did [Dr. Butt] deny you that you believe [he] should have provided you?" (Dkt. No. 41-8 at 54:8-18.) Plaintiff testified that Dr. Butt was "snotty. Inside." *Id*. at 54:19-21. As discussed above regarding Defendant Parsons, rudeness does not violate the Constitution. Nothing in the record indicates that Defendant Butt was deliberately indifferent to Plaintiff's medical needs. Indeed, the record shows that Defendant Butt addressed Plaintiff's needs by prescribing an antibiotic. Although Plaintiff testified that he reacted poorly to the medication, nothing in the record suggests that Defendant Butt prescribed the medication knowing that Plaintiff would suffer adverse effects. Therefore, I recommend that the Court *sua sponte* dismiss the claims against Dr. Butt pursuant to 28 U.S.C. § 1915(e)(2).

## VII.   CLAIMS AGAINST DEFENDANT CORRECTIONAL MEDICAL CARE

The memorandum of law submitted on behalf of CMC does not make any arguments explicitly addressing the claims against that party. (Dkt. No. 42-9.) I recommend that the Court *sua sponte* dismiss the claims against CMC.

Plaintiff sued CMC under 42 U.S.C. § 1983 because Defendants Lovell, Parsons, and Butt provided him with inadequate care. (Dkt. No. 41-8 at 54:24-55:16; Dkt. No. 1 at 1.) Courts have treated CMC has a municipality or a quasi-municipality when analyzing civil rights claims

16

against it.  *See, e.g., Quinn v. Stewart*, No. 10 Civ. 8692, 2012 U.S. Dist. LEXIS 46538, at *14

n.3, 2012 WL 1080282, at *5  n.3 (S.D.N.Y. Jan. 18, 2012) ("CMC, as a private entity

maintaining the [facility] on behalf of [the County], may also be liable under a municipal liability

theory if it maintains a policy that causes the infringement of a prisoner's constitutional rights

and is found to be acting under the color of state law.").  In order to prove a § 1983 against a

municipality, "a plaintiff is required to . . . prove three elements: (1) an official policy or custom

that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v.

Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  Here, as discussed above, the facts when viewed in

Plaintiff's favor do not raise a triable issue that he was denied any constitutional right.

Therefore, I recommend that the Court *sua sponte* dismiss the claims against CMC.

## VIII.  PLAINTIFF'S FAILURE TO COMPLY WITH COURT ORDERS

As discussed above, this action should be dismissed because Plaintiff failed to exhaust his

administrative remedies.  In addition, each Defendant is entitled to judgment on the merits of

Plaintiff's claims.  In the alternative, I find that this case is subject to dismissal due to Plaintiff's

failure to comply with court orders.

Rule 41 of the Federal Rules of Civil Procedure provides that if "the plaintiff fails to

prosecute or to comply with these rules or a court order, a defendant may move to dismiss the

action . . . ."  Fed. R. Civ. P. 41(b).  The term "these rules" in Rule 41(b) is construed to mean not

only the Federal Rules of Civil Procedure but the local rules of practice for a district court.  *See*,

*e.g.*, *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, J.) (dismissing complaint

pursuant to Fed. R. Civ. P. 41(b) for failing to comply with, *inter alia*, the district court's Local

Rule 10.1(b)(2)). Even in the absence of a motion, federal district courts have the inherent power

to dismiss a case *sua sponte* pursuant to Rule 41(b).  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962).  The appropriateness of dismissing an action pursuant to Rule 41(b) is determined in light of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted).

Here, Plaintiff has failed to prosecute his case for the last seven  months.  Plaintiff has not communicated with the Court since August 12, 2011 when he appeared for a telephone conference.  Plaintiff has not complied with this Court's rules or orders.  Local Rule 10.1(b) of the Local Rules of Practice for this Court expressly provides that "**All . . . pro se litigants must immediately notify the Court of any change of address**."  N.D.N.Y. L.R. 10.1(c)(2) (emphasis in original).  On March 12, 2010 the Court issued an Order that, *inter alia*, required Plaintiff to "**promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**".  (Dkt. No. 6 at 3, emphasis in original.)  Despite the clear language of the local rule and the Court's order, Plaintiff has not advised the Court or the other parties of his new address.  All mail sent to Plaintiff at his address of record over the last seven months has been returned without a forwarding address.

In light of Plaintiff's failure to comply with court rules and orders and his failure to update his address so that the Court can communicate with him, I find that no less drastic

18

sanctions are available.  Therefore, I recommend that, in the alternative to granting Defendants'

motions for summary judgment, the Court dismiss this action under Rule 41(b) without

prejudice.

      **ACCORDINGLY**, it is

      **RECOMMENDED** that Defendant Lovell's motion for summary judgment (Dkt. No.

41) be **GRANTED**; and it is further;

      **RECOMMENDED** that the motion of Defendants Correctional Medical Care and

Michele Parsons for summary judgment (Dkt. No. 42) be **GRANTED**; and it is further

      **RECOMMENDED** that the Court *sua sponte* dismiss the claims against Defendant

Correctional Medical Care; and it is further

      **RECOMMENDED** that the Court *sua sponte* dismiss the claims against Defendant Dr.

Butt; and it is further

      **RECOMMENDED** that, in the alternative, the Court dismiss the action without

prejudice for Plaintiff's failure to comply with Court orders.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 30, 2012
     Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge